**RECEIVED**

JUL 3 1 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JENNA B. LEBRON, ET AL. | CIVIL ACTION NO.: 12-1901 |
| VERSUS | JUDGE DOHERTY |
| ENSCO OFFSHORE CO., ET AL. | MAGISTRATE JUDGE HANNA |

### MEMORANDUM RULING

Pending before this Court is an "Appeal of Magistrate Judge's Order Denying in Part Plaintiffs' Motion for Leave to Take Depositions" [Doc. 59] filed by plaintiff Jenna B. Lebron, personally and as personal representative of the deceased Arturo I. Lebron, and as tutrix on behalf of L.R. Lebron, L.A. Lebron, Alfredo O. Lebron, and Luisa J. Lebron. The plaintiffs appeal that portion of the magistrate judge's Memorandum Ruling [Doc. 57] in which the magistrate judge granted plaintiffs leave to depose Leah Yager, Michael Chapman, *either* John Bernard *or* John Meaux, and *either* John Restituyo *or* Gonzalo Castillo, but denied leave to depose Pat Attoway, Paul Perkins, Terry Kaufman, Hamilton Burris, Mike "Catfish" Arrington, Barrett Bonin, and a corporate representative of PHI. Defendants ENSCO Company and Energy XII GOM, LLC ("defendants") filed an opposition to the appeal [Doc. 67].

After consideration of the briefs of the parties, it is ORDERED that the ruling of the magistrate judge is AFFIRMED.

**I.      Factual and Procedural Background**

The instant lawsuit arises out of a fatal helicopter crash, in which plaintiffs' decedent Arturo Lebron was killed. At the time of the crash, pilot Lebron was performing a go-around from an

approach to an Energy XXI offshore fixed platform on May 28, 2012 when it crashed into the cantilever drilling floor of the Ensco 99 jack-up drilling rig which allegedly was intruding into the approach airspace of the platform helideck.

At the time they filed their motion to take additional depositions, the plaintiffs had already taken 30 depositions; in their motion, they seek to take 12 more. The magistrate judge denied the plaintiffs' request to take all 12 of the additional depositions, concluding some of the additional depositions proposed by the plaintiffs would be unreasonably cumulative or duplicative; the plaintiffs have already had ample opportunity to take all necessary depositions; and it would be unduly burdensome to permit all of the requested depositions to be taken. Nevertheless, the magistrate judge allowed some of the additional depositions, as follows:

> However, in light of the gravity of this lawsuit, certain of the requested depositions seem reasonably calculated to lead to the discovery of admissible evidence and should, therefore, be permitted. As one district court has said: "A party seeking to take more than ten depositions must 'show the necessity of all the depositions she took in reaching the prescribed limit.'" Furthermore, "'[t]he mere fact that more than ten individuals may have discoverable information in a case does not mean that taking more than ten depositions makes sense.'" Accordingly, having balanced the foregoing principles and finding it likely that relevant discoverable evidence may be found, the undersigned will permit the deposition of Leah Yeager and Michael Chapman. Additionally, and for the same reason, the undersigned will permit the deposition of *either* Jon Bernard or John Meaux (not both), and the undersigned will permit the deposition of *either* John Restituyo or Gonzalo Castillo (not both), with the plaintiff free to decide which one of these two pairs will be the deponent. The undersigned will not permit the depositions of Pat Attoway, Paul Perkins, Terry Kaufman, Hamilton Burris, Mike "Catfish" Arrington, or Barrett Bonin, finding that these depositions would be cumulative and/or unduly burdensome. Finally, the undersigned will not permit another corporate deposition of PHI on additional liability issues raised by the newly produced documents *at this time*. However, after the plaintiff has completed its review of the documents and has identified specific documents on which it would like to question PHI's representative, the issue of a further corporate deposition may be raised again.[1]

---

[1] *See* Memorandum Ruling, Doc. 57, at pp, 2-4 (emphasis added) (internal citations omitted).

The plaintiffs appeal the foregoing ruling denying them the opportunity to depose Pat Attoway, Paul Perkins, Terry Kaufman, Hamilton Burris, Mike "Catfish" Arrington, Barrett Bonin, and a corporate representative of PHI.

## II. Standard of Review

A magistrate judge may rule directly on a nondispositive pretrial motion. 28 U.S.C. §636(b)(1)(A). When objections are raised to such a ruling, a district court must consider them and "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir.1995). Under this deferential standard, a magistrate judge's decision must be affirmed unless "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

District courts within the Fifth Circuit have noted the "clearly erroneous" standard applies to the <u>factual components</u> of the magistrate judge's decision. *See, e.g., Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204, 208 (N.D.Tex.1996) (Fitzwater, J.). "'[T]he district court may not disturb a factual finding of the magistrate judge 'unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed.'" *Id. See also RTC v. Sands*, 151 F.R.D. 616, 618 (N.D.Tex.1993) (Fitzwater, J.), *citing Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). "If a magistrate judge's 'account of the evidence is plausible in light of the record viewed in its entirety,' a district judge may not reverse it." *Id., quoting Smith*, 154 F.R.D. at 665; *RTC v. Sands*, 151 F.R.D. at 618. The <u>legal conclusions</u> of the magistrate judge are reviewable *de novo*, and the district judge reverses if the magistrate judge erred in some respect in his legal conclusions. *Id.* Finally, "the

abuse of discretion standard governs review of 'that vast area of ... choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous.'" *Id., quoting Smith*, 154 F.R.D. at 665; *In re REPH Acquisition Co.*, 134 B.R. 194, 202–03 (N.D. Tex.1991) (Fitzwater, J.). *See also Spillers v. Chevron USA Inc.*, 2013 WL 869387 (W.D. La. Mar. 6, 2013) (Hicks, J.) (magistrate judge's legal conclusions are reviewed *de novo*, while factual findings are reviewed for clear error).

Additionally, the Fifth Circuit has noted "[a] trial court enjoys wide discretion in determining the scope and effect of discovery, *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982), *citing Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539 (5th Cir. 1980), *cert. denied*, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). *See also See McKethan v. Tex. Farm Bureau*, 996 F.2d 734, 738 (5th Cir.1993); *Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 436 & n. 114 (5th Cir.1990), and has pointed out it is "unusual to find an abuse of discretion in discovery matters." *Sanders*, 678 F.2d at 618, *citing Swanner v. United States*, 406 F.2d 716, 719 (5th Cir. 1969).

### III. The Appeal

#### A. Failure to identify standard and specific errors of the magistrate judge

At the outset, this Court notes the failure of the plaintiffs to identify specific alleged errors of the magistrate judge from which they appeal. Rather, the plaintiffs merely argue – as if for the first time – their position that they should be allowed to take the additional depositions the magistrate judge denied. The gist of the plaintiffs' argument is that the 10-deposition rule should not be applicable in this case, primarily because there are a huge number of potential witnesses who can produce useful information.

Before delving into the substance of the magistrate judge's ruling, this Court notes Judge

Fitzwater's of the Northern District of Texas, enlightening admonition in *Assistmed, Inc. v. Conceptual Health Solutions, Inc.*, 2006 WL 1489422 (N.D.Tex. May 11, 2006) (Fitzwater, J.), in which that Court highlighted the appellant's failure to properly present the matters for appeal, as follows:

> The court has also repeatedly advised appealing parties what is necessary to challenge a magistrate judge's order in a nondispositive matter. "When a party appeals a magistrate judge's order, he must demonstrate how the order is reversible under the applicable standard of review- de novo for error of law, clear error for fact findings, or abuse of discretion for discretionary matters." "This means that, at a minimum, the party must identify the ruling being challenged, specify the standard of review, and explain why the decision in question is reversible under that standard." The court has reiterated this minimum requirement in decisions since *Librado*.[2]
>
> AssistMed has made no attempt to specify the standard of review and explain why the magistrate judge's decision is reversible under that standard. For example, it is settled that "[t]he district court has broad discretion in discovery matters and its rulings will be reversed only on an abuse of that discretion." Yet not once in AssistMed's 16-page objection does it use the term "abuse of discretion" much less address the magistrate judge's decision under that standard. Instead, it simply posits that the magistrate judge erred in some respect, without asserting explicitly whether she did so as a matter of law, clearly erred in her fact findings, or abused her discretion. In some instances, it does not even assert that the magistrate judge committed error; it posits that her decision was "improper." Although this failure would of itself be sufficient to reject AssistMed's objection by summary order for failing to comply with its minimum obligations on appeal, given the significance AssistMed attaches to the discovery the magistrate judge has declined to compel defendants to produce, the court has attempted to identify those instances in which AssistMed has in some manner identified reversible error. But this deficiency has contributed to, if not caused, AssistMed's inability to demonstrate that the magistrate judge's order should be reversed.

*Assistmed*, 2006 Wl 1489422 at *2.[3]

---

[2] *Librado v. M.S. Carriers, Inc.*, 2004 WL 583602, at *4, 2004 U.S. Dist. LEXIS 10817, at *13 (N.D.Tex. Mar.23, 2004) (Fitzwater, J.).

[3] *See also Hoskins v. Kaufman Independent School Dist.*, 2004 WL 1283958 (N. D. Tex. 2004) (J. Fitzwater). In *Hoskins*, the court stated:

> The court begins by noting that Hoskins has not addressed the applicable standards of review,

Because of the appellant's failure to identify the applicable standard and specify the alleged errors on appeal, the court noted, "In this instance, the court is left largely to guess at what AssistMed contends is the standard of review." *Id.* at *1.

Similarly, in the instant case, the plaintiffs (as appellants) fail to specify the standard of review and explain why the magistrate judge's decision is reversible under that standard. Nowhere in the plaintiffs' brief do they identify the standard under which the magistrate judge's discovery ruling should be reviewed or address the magistrate judge's decision under that standard. Instead, the plaintiffs simply regurgitate the argument they made to the magistrate judge, without identifying specific errors on appeal. Because the plaintiffs do not specify errors on the part of the magistrate judge, there is no discussion or reference to *how* the magistrate judge erred, that is, whether he did

---

which requires that the court first determine the yardstick by which it will evaluate the magistrate judge's order. The court recently encountered a similar problem in another appeal, *Librado v. M.S. Carriers, Inc.*, 2004 WL 583602 (N.D.Tex. Mar.23, 2004) (Fitzwater, J.). Although the court's opinion in Librado was filed after Hoskins initiated the instant appeal, the court's observations bear repeating here:

> MSC has made this court's review of the magistrate judge's order difficult by waiting until its reply brief to attempt to specify the applicable standard of review and to state its reasons for maintaining under that standard that the ruling is reversible. Except for citing Rule 72 to establish that its appeal is timely, MSC does not discuss the standard of review until its reply brief. And it is not until its reply brief that MSC specifically engages controlling aspects of the magistrate judge's reasoning. In the past, after addressing several appeals in which the objecting parties had confused the standards of review, this court found it necessary to reemphasize the distinctions among those standards. In the present case, the court thinks it necessary to reemphasize the importance of citing the standard of review and arguing cogently under that standard why the magistrate judge has committed reversible error. When a party appeals a magistrate judge's order, he must demonstrate how the order is reversible under the applicable standard of review— de novo for error of law, clear error for fact findings, or abuse of discretion for discretionary matters. This means that, at a minimum, the party must identify the ruling being challenged, specify the standard of review, and explain why the decision in question is reversible under that standard.

*Hoskins*, 2004 WL 1283958, at *2, *citing Librado*, 2004 WL 583602, at *4 (emphasis added) (citations and internal quotation marks omitted).

so as a matter of law, clearly erred in his fact findings, or abused his discretion. As in *Assistmed*, the plaintiffs' appeal does not assert the magistrate judge committed error; rather, it appears to simply posit that the magistrate judge's decision was "improper."

Given the foregoing deficiency, this Court is left to guess at the alleged errors on appeal and the standard under which those errors should be evaluated. In *Barrow v. Greenville Independent School District*, 202 F.R.D. 480, 481 (N.D. Tex. 2001), that fellow district court was faced with the same question with which this Court is faced, namely, whether to allow additional depositions by a party that had already exceeded the maximum number of depositions allowed by Rule 30(2)(A). In *Barrow*, the court stated:

> When a party appeals a magistrate judge's decision concerning leave to take depositions in excess of the number allowed by Rule 30(a)(2)(A), the court reviews for clear error the factual findings on which the ruling is based and reviews de novo any legal conclusions that are challenged. *It reviews only for abuse of discretion, however, the magistrate judge's ultimate decision concerning the number of depositions to be allowed, because the determination whether to permit additional depositions is essentially an exercise in discretion.*

202 F.R.D. at 481 (emphasis added), *citing Raniola v. Bratton*, 243 F.3d 610, 628 (2nd Cir.2001) (stating that Rule 26(b)(2) "provides several discretionary factors to be weighed in imposing" the ten-deposition limit of Rule 30(a)(2)(A)); *Bell v. Fowler*, 99 F.3d 262, 271 (8th Cir.1996) (holding that district court did not abuse its discretion in denying motion to take additional depositions); *Andrews v. Fowler*, 98 F.3d 1069, 1080 (8th Cir.1996) (accord).

Considering the foregoing, this Court will review the magistrate judge's ruling limiting the number of additional depositions that can be taken by the plaintiffs for abuse of discretion.

### B. Substance of the appeal

Rule 30(a)(2)(A)(I) of the Federal Rules of Civil Procedure generally limits a party to taking

7

ten depositions. "The discovery provisions of the Federal Rules of Civil Procedure were designed to afford the parties the right to obtain information pertinent to the pending controversy, and to effectuate that purpose they are to be liberally construed." *United States v. McWhirter*, 376 F.2d 102, 106 (5th Cir. 1967). Nevertheless, it is well-settled that district courts have broad discretion to oversee discovery. Indeed, the Court's discretion is codified in Fed. R. Civ. P. 26(b)(2)(a), which states the Court "may alter the limits in these rules on the number of depositions" by order. The Court's discretion is limited in Fed. R. Civ. P. 26(b)(2)(C), which requires the Court to limit discovery when it determines either that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Referencing the standard for permitting additional depositions contained within Rule 26(b)(2), the *Barrow* court explained that "a party who, without court permission, has already taken the maximum number of depositions permitted by Rule 30(a)(2)(A), and who seeks to establish that the decision not to allow additional ones is an abuse of discretion, <u>must demonstrate the necessity for each deposition she took without leave of court pursuant to the presumptive limit of Rule 30(a)(2)(A).</u>" 202 F.R.D. at 482 (emphasis added). Noted the court:

> The rationale for such a standard is apparent when applied to the present case. Had Barrow opted not to take other depositions, she could have taken the ones in question without first obtaining leave of court. Barrow should not be allowed to conduct ten

8

(or, in this case, 15) depositions that were not subject to judicial review under the Rule 26(b)(2) standards and then only be required to challenge on appeal the magistrate judge's specific reasons for denying her leave to take the additional ones at issue. *See Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 692 (D.Kan.1996) ("One aim of this [Rule] is to assure judicial review under the standards stated in Rule 26(b)(2) before any side will be allowed to take more than ten depositions in a case without agreement of the other parties."). If this approach were condoned, a party could indirectly circumvent the cap on depositions by exhausting the maximum allotted number to take those that she could not justify under the Rule 26(b)(2) standards, and then seeking leave to exceed the limit in order to take depositions that she could substantiate. Rule 30(a)(2)(A) is intended to control discovery, with its attendant costs and potential for delay, by establishing a default limit on the number of depositions. *See Whittingham v. Amherst College*, 163 F.R.D. 170, 171–72 (D.Mass.1995) ("These rules were promulgated to enable courts to maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of '[w]ide-ranging discovery' and the potential for discovery to be used as an 'instrument for delay or suppression.' " (quoting commentary to Rule 26(b)(2))). This salutary purpose would be subverted unless a party who takes the maximum number of depositions allowed, and then seeks leave to conduct more, is required to show the necessity of all the depositions she took in reaching the prescribed limit in order to demonstrate abuse of discretion in denying leave.

This Court has scoured the record for evidence that the plaintiffs sought and were granted leave to exceed the statutorily required number of ten depositions, to no avail. Indeed, it appears the strategy of the plaintiffs was to take numerous depositions of witnesses who were peripheral to the litigation in order to develop further discovery. The plaintiffs apparently did so without regard to the number of depositions to which they were limited by statute. The plaintiffs explain their strategy in their motion for leave:

> Considering the large number of potential witnesses at the accident scene (perhaps 80) and the refusal of PHI and Energy XXI as "parties to" the NTSB investigation to provide information relative to the investigation of this accident until last week it was necessary to take a large number of depositions to find the well hidden facts that so strongly prove up this case.
>
> [ . . . ]
>
> It was obviously impossible to know which witness would produce useful

9

information until depositions were taken.[4]

The record shows the defendants were initially cooperative in allowing the plaintiffs to take depositions beyond the number prescribed by the rule. After thirty depositions, however, the defendants refused to cooperate in the scheduling of additional depositions, prompting the motion by the plaintiffs.

In the instant case, it is unclear to what extent the magistrate judge considered all of the depositions taken by the plaintiffs without leave of court. What is clear is that the magistrate judge, in his discretion and after considering the anticipated testimony of each witness, permitted the depositions of either Jon Bernard or Jon Meaux – but not both – and either John Restiyo or Gonzalo Castillo – but not both – on grounds allowing the depositions of all four witnesses would be cumulative and/or duplicative. Additionally, the magistrate judge did not permit the depositions of Pat Attoway, Paul Perkins, Terry Kaufman, Hamilton Burris, Mike "Catfish" Arrington, and Barrett Bonin, finding these depositions would be cumulative and/or unduly burdensome. Finally, the magistrate judge did not permit a second corporate deposition of PHI on additional liability issues raised by documents recently produced by the defendants, but did not foreclose the possibility of another deposition in the future. Rather, the magistrate judge ordered that after the plaintiffs have completed their review of the newly-received documents and have identified specific documents on which they would like to question PHI's representative, the issue of additional corporate depositions can be raised again. In support of his ruling, the magistrate judge correctly noted: "The mere fact that

---

[4] *See* plaintiffs' Memorandum in Support of Motion for Leave to Take Depositions, Doc. 44, at pp. 3, 5. It appears the plaintiffs chose to begin taking numerous depositions before certain documents were produced by the defendants. The plaintiffs now argue the documents that were produced necessitate the additional depositions. The magistrate judge considered this argument, and then carefully reviewed the anticipated testimony of the witnesses the plaintiffs wish to depose, concluding only some of the requested additional depositions should be permitted.

more than ten individuals may have discoverable information in a case does not mean that taking more than ten depositions makes sense." *See Byers v. Navarro County*, 2011 WL 4367773 (N.D. Tex. Sept. 19, 2011) *citing United States v. Goertz*, 2010 WL 2900309 (W.D.Tex. July 20, 2010).

After review of the record in this case and the applicable standards that govern the issues presented, this Court concludes the magistrate judge did not abuse his discretion in denying the requested depositions. The record shows the magistrate judge carefully reviewed the need for the additional depositions, and allowed some, but not all of them, to proceed. The plaintiffs fail to demonstrate that the magistrate judge abused his considerable discretion in doing so.

IV. **Conclusion**

Considering the foregoing, IT IS ORDERED that the "Appeal of Magistrate Judge's Order Denying in Part Plaintiffs' Motion for Leave to Take Depositions" [Doc. 59] filed by plaintiff Jenna B. Lebron, personally and as personal representative of the deceased Arturo I. Lebron, and as tutrix on behalf of L.R. Lebron, L.A. Lebron, Alfredo O. Lebron, and Luisa J. Lebron is DENIED, and the March 28, 2013 Ruling of the magistrate judge [Doc. 57] is AFFIRMED in its entirety.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ____31____ day of July, 2013.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE