UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| JENNA B. LEBRON, PERSONALLY AND AS PERSONAL REPRESENTATIVE OF THE DECEASED, ARTURO I. LEBRON, AS TUTRIX OF THE MINORS, L. R. LEBRON AND L. A. LEBRON, AND THE MAJORS, ALFREDO O. LEBRON AND LUISA J. LEBRON | * * | CIVIL ACTION NO. 6:12-CV-01901 JUDGE HAIK |
| VERSUS | * | MAGISTRATE JUDGE HANNA |
| ENSCO OFFSHORE COMPANY AND ENERGY XXI GOM, LLC | | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

MEMORANDUM OF JENNA B. LEBRON, PERSONALLY AND AS PERSONAL REPRESENTATIVE OF THE DECEASED, ARTURO I. LEBRON, AS TUTRIX OF THE MINORS, L. R. LEBRON AND L. A. LEBRON, AND THE MAJORS, ALFREDO O. LEBRON AND LUISA J. LEBRON, **IN OPPOSITION TO** MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DAMAGE NOT RECOVERABLE UNDER DOHSA (**DOCUMENT 82**), MOTION IN LIMINE TO EXCLUDE EVIDENCE OF SUBSEQUENT REMEDIAL MEASURES (**DOCUMENT 83**), MOTION TO DISMISS FOR LACK OF JURISDICTION (**DOCUMENT 84**) AND MOTION TO DETERMINE INAPPLICABILITY OF THE "PENNSYLVANIA RULE" (**DOCUMENT 85**) BY DEFENDANTS, ENERGY XXI GOM, LLC AND ENSCO OFFSHORE COMPANY

MAY IT PLEASE THE COURT:

Claimants object to the untimely filing of the above four referenced motions by defendant but wish to address the substance of each motion because these matters will no doubt be addressed at trial.

Two of these motions (Motion in Limine to Exclude Evidence of Damages Not Recoverable Under DOHSA, Document 82, and Motion to Dismiss for Lack of Jurisdiction,

Document 84) are based upon the same facts and arguments of law so we will address them together.

Motion in Limine to Exclude Evidence of Damages Not Recoverable Under
DOHSA (Document 82) and Motion to Dismiss for Lack of Jurisdiction (Document 84)

The latter of these two motions (Document 84) is apparently an effort to achieve the results of the first motion by couching it in terms of jurisdictional issues to avoid untimeliness problems. Stated in most direct terms, these motions are an effort to limit the commercial aviation provisions (46 U.S.C. 30307) of the Death on the High Seas Act (DOHSA) so as to be inapplicable to a commercial flight on which passengers are not boarded. Defendants offer nothing in the history of this legislation nor in the legal analysis which has interpreted the legislation to suggest that was the intent of Congress. On the contrary, the opposite is true.

While the impetus for passage of the commercial aviation provisions of DOHSA was in fact the crash of TWA Flight 800 there is nothing in the legislation that limits the act to airline activity nor to carrying passengers. The applicable provision of the act reads:

> "46 U.S. Code § 30307 - Commercial aviation accidents
>
> (b) Beyond 12 Nautical Miles.—In an action under this chapter, if the death resulted from a commercial aviation accident occurring on the high seas beyond 12 nautical miles from the shore of the United States, additional compensation is recoverable for non-pecuniary damages, but punitive damages are not recoverable."

Neither the word "passenger" nor any term of similar meaning is in the entirety of 46 U.S. Code § 30307.

The parties will stipulate that this crash and Mr. Arturo Lebron's death occurred approximately 15 miles off the coast of Louisiana in the Gulf of Mexico. In *Brown v. Eurocopter S.A.*, 111 F.Supp.2d 859 (2000), the Court held that the plain language of the act

shows that it intended to cover offshore helicopter flights, operations conducted under "Title 14 CFR Part 135 flight on demand air taxi".   The Court said:

> A Part 135 on-demand air taxi service is plainly a "commercial operation" as that term is used throughout the FAR.   Significantly, AIR 21 itself references Part 135 with the implication that operations under this Part are "commercial aviation operations".   *Brown, Id*. at 864.

While the flight in progress at the time of the accident in *Brown* was carrying passengers there is nothing in the Court's analysis that would achieve the opposite result if the flight was en route to carry a passenger but he had not yet boarded.   At trial the facts will show that as in *Brown*, both PHI (the instant helicopter operator) and the NTSB classified this incident as a commercial flight operated under Part 135 of the FAR's.

In *Gund v. Pilatus Aircraft, Ltd.*, 2010 WL 887376 (N.D. Cal. March 11, 2010), the Court considered a DOHSA claim arising out of a crash along the coast of Costa Rica.   Although the pilot was not authorized to conduct "any commercial flights" in Costa Rica, he did apparently charge $160.00 for the accident flight that was sufficient for the Court to apply the rationale of *Brown* and find the commercial aviation provisions of DOHSA applicable.   The Court relying upon the analysis in *Eberli v. Cirrus Design Corporation*, 615 F.Supp.2d 1369, 1373 (2009), discussed immediately below, hinged its decision on the following quoted language:

> The plain meaning of the statutory text—and the definitions in the regulations—clearly demonstrate that a flight's "commercial" character hinges on profit or compensation.   "Commercial" describes anything "made, done, or operating primarily for profit."   Webster's New World Dictionary, 280 (1991). *Gund*, 2010 WL 887376, at *5.

In *Eberli*, the Court found the DOHSA aviation provisions inapplicable to a flight of a new aircraft being delivered to its owner under a special export certificate of airworthiness which required that the aircraft be operated under 14 CFR Part 91 (non-commercial aviation) and

3

prohibited it from being operated to carry passengers or property for compensation or hire. Stated otherwise, the permit for the aircraft to conduct this flight required that it be conducted under the non-commercial aviation provisions of the FAR's (Part 91) and prohibited it from being conducted for compensation or hire. The result reached in *Eberli* is clearly not supportive of defendants' motions.

In the instant matter PHI was under a commercial contract to provide the involved helicopter (Energy 24) to its customer Energy XXI GOM, LLC (Energy XXI) and the flight was conducted under the Federal Aviation Regulation provisions for commercial air taxi operations (FAR Part 135). Arturo Lebron began the flight with an assignment to carry cargo for Energy XXI from PHI's Grand Isle base to Energy XXI's platform in the Gulf of Mexico then he went to another Energy XXI platform in the Gulf of Mexico (South Timbalier 67 B) to pick up an Energy XXI passenger to be eventually transported with another passenger back to the Grand Isle base. The crash occurred when he arrived at ST67B. Mr. Lebron was a commercial licensed pilot operating an aircraft certified under commercial aviation rules on a mission governed by commercial aviation rules (FAR 135) for which a charge was being made.

For these reasons the Court has jurisdiction of the claims for loss of care, comfort and companionship (which can be equated to loss of society) and thus, plaintiffs' evidence of "non-pecuniary damages" is recoverable. Defendants' motions filed as Document 82 and Document 84 should be denied.

Evidence of Subsequent Remedial Measures (Document 83)

Throughout the course of this litigation defendants have argued that various safety precautions required by regulation, incorporated into company operating practices or adopted as

universal industry practices were inappropriate and infeasible.  Yet those exact actions (with no change in regulation, operations manuals or industry practices whatsoever) were taken immediately after the accident.  If defendants' employees who testify agree that these actions should have and could have (feasible) been taken before the accident, then the exceptions to Rule 407 would not be applicable.

<u>Motion to Determine Inapplicability of the "Pennsylvania Rule" (Document 85)</u>

In *The Pennsylvania*, 86 U.S. 125 (1873), the U.S. Supreme Court held that when a vessel violates a rule of navigation there is a rebuttable evidentiary presumption that the fault of the vessel was the cause of a collision.  In *Kernan v. American Dredging Company*, 355 U.S. 426, 430-31 (1958), the Court held that a violation of an OSHA safety statute creates a presumption of negligence per se.  As previously acknowledged by defendants herein (see document 80-1):

> "The Fifth Circuit most recently tackled the 'Pennsylvania Rule' in May in *Mike Hooks Dredging Co., Inc. v. Marquette Transp. Gulf-Inland, L.L.C.*, No. 12-30474, 2013 WL 2211677 (5th Cir. May 21, 2013).  The Court succinctly explained the current state of the rule as follows:
>
>> The rule of *The Pennsylvania* has its origin in a seminal admiralty case, in which the Supreme Court established the burden-shifting presumption for causation when a vessel at the time of a collision is in actual violation of a statutory rule intended to prevent collisions.  In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, *but that it could not have been*.  The rule thus creates a presumption that one who violates a regulation intended to prevent collisions will be deemed responsible.  The presumption, however, is rebuttable and applies only to violations of statutes that delineate a clear legal duty."

Recall as discussed above the Ensco 99 is a vessel and the PHI, Inc. helicopter was engaged in traditional maritime activities.  Thus, the burden shifts under the rationale of *Mike Hooks Dredging Co., Inc.* and defendants are charged with negligence per se via the analysis of *Kernan*

5

above.   Through the testimony of Mr. Gregg S. Perkin, P.E., a court recognized expert in the area of offshore regulatory matters and safety, we will show that not one but two separate statutory and regulatory schemes were violated by Ensco and Energy XXI.   More than six months before this accident occurred United States Department of the Interior Bureau of Safety and Environmental Enforcement (BSEE) issued notice to lessees number 2011 N-08 "as guidance documents in accordance with 30 CFR 250.103 to clarify, supplement and provide more detail about certain BSEE regulatory requirements…".   The only means for defendants to have avoided compliance with these mandates was through approval by BSEE of an alternative approach for compliance. That notice to lessees required that Energy XXI place a large X on its helipad when it deemed it closed and notify PHI, Inc. of the closure, neither of which occurred.   Further, 30 CFR § 250.1900 required that Energy XXI utilize a "management of change" system of safety that would have accomplished these same ends.   There are many industry recommended practices (by the Helicopter Safety Advisory Conference, American Petroleum Institute, etc.) that illustrate how to accomplish these regulated activities.   What plaintiffs suggest should have been done here is common practice in the Gulf of Mexico by most responsible operators.

Whether the undeniable violation of the safety statutes by both defendants, Energy XXI and Ensco, will result in an application of the negligence per se rule or merely serve to provide the appropriate standard of care should not be judged until the Court has a full opportunity to understand how and why these violations occurred.   For these reasons defendant's Motion to Determine Inapplicability of the Pennsylvania Rule (Document 85) should be deferred to the trial on the merits.

6

CONCLUSIONS

For the reasons stated above, each of defendants' motions should be denied.

Respectfully submitted,

BROUSSARD & DAVID, L.L.C.

   s/Richard C. Broussard
Richard C. Broussard (#3526)
Blake R. David (#27427)
600 Jefferson Street, Suite 700
Post Office Box 3524
Lafayette, Louisiana 70502-3524
Phone:  (337) 233-2323
Fax:  (337) 233-2353
Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2014, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to those unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

   s/Richard C. Broussard
Richard C. Broussard